Page 1

```
              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                     ORLANDO DIVISION
             CASE NO.:  6:23-cv-01869-RBD-DCI

   ISLAM "SAL" SHIMY,
         Plaintiff,
   vs.
   EASTERN FLORIDA STATE
   COLLEGE BOARD OF TRUSTEES,

         Defendant.


                 DEPOSITION OF DEDRA SIBLEY
              Taken on Behalf of Plaintiff

   DATE TAKEN:    FEBRUARY 20, 2025

   TIME:          1:20 P.M. - 1:52 P.M.

   PLACE:         ALL PARTIES APPEARED REMOTELY








         Examination of the witness taken before:

                    Amanda L. Daniel-Ennis
                  Stenographic Court Reporter
```

Page 2

1  APPEARANCES
2
   Counsel for Plaintiff:
3
      MELISSA MIHOK, ESQUIRE
4     Mihok Law
      1401 East 22nd Avenue
5     Tampa, Florida 33605-1837
      melissa@mihoklaw.us
6     (813)549-4550
7
   Counsel for Defendant:
8
      MARK LEVITT, ESQUIRE
9     Ford Harrison, LLP
      300 South Orange Avenue, Suite 1300
10    Orlando, Florida 32801-3379
      mlevitt@fordharrison.com
11    (407)418-2306
12    HOWARD WALDMAN, ESQUIRE
      Ford Harrison, LLP
13    300 South Orange Avenue, Suite 1300
      Orlando, Florida 32801-3379
14    hwaldman@fordharrison.com
      (407)418-2311
15
      MICHAEL RICHEY, ESQUIRE
16    Eastern Florida State College
      3865 North Wickham Road, Building 10, Room 205
17    Melbourne, Florida 32935-2310
      richeym@easternflorida.edu
18    (321)433-5559
19
20
21
22
23
24
25

Page 3

1           I N D E X
2  WITNESS                                    PAGE
3  Called by the Plaintiff:
4  DEDRA SIBLEY
5  DIRECT EXAMINATION BY MS. MIHOK................... 4
6  CROSS-EXAMINATION BY MR. LEVITT................... 17
7  CERTIFICATE OF REPORTER OATH...................... 22
8  CERTIFICATE OF REPORTER........................... 23
9  WITNESS READ & SIGN LETTER........................ 24
10 ERRATA SHEET...................................... 25
11
12
13         E X H I B I T S
14           (None)
15

Page 4

1       THEREUPON, the following proceedings were had
2  and taken at 1:20 p.m.:
3       THE COURT REPORTER:  Please raise your right
4  hand.  Do you solemnly swear or affirm that any
5  testimony you give will be the truth, the whole
6  truth, and nothing but the truth?
7       THE WITNESS:  I do.
8       DEDRA SIBLEY, called as a witness by the
9  Plaintiff, having been first duly sworn, testified as
10 follows:
11            DIRECT EXAMINATION
12 BY MS. MIHOK:
13   Q.  Ms. Sibley, I understand you're an attorney
14 yourself?
15   A.  I am.
16   Q.  Would you like me to go over the rules of
17 depositions, or are you familiar with those?
18   A.  I'm familiar, but you can if you wish.
19   Q.  I'm not going to waste anybody's time, I'm
20 pretty sure you've got a pretty good handle on it, so
21 I'll just give you an instruction if I need to later on.
22       Are you currently employed?
23   A.  I am.
24   Q.  Where are you employed?
25   A.  Sibley Law & Associates.

Page 5

1   Q.  What do you do there?
2   A.  I'm an attorney.
3   Q.  How long have you held that position?
4   A.  At this location?
5   Q.  Yes, ma'am.
6   A.  Three years.
7   Q.  How long have you been a member of the Bar?
8   A.  Since 2007.
9   Q.  Did you ever work for Eastern Florida State
10 College?
11  A.  I did.
12  Q.  I'm going to refer at times during your
13 deposition to "the college," can we agree that that is
14 Eastern Florida State College?
15  A.  We can.
16  Q.  Okay.  When were you employed by the college?
17  A.  I think I started in 2011.
18  Q.  Okay.  Do you know approximately how many years
19 you worked there?
20  A.  Until 2022.
21  Q.  What positions did you hold there?
22  A.  Director of -- so a director position,
23 associate provost position, a provost position, I think
24 that was it.  And a -- my final position was dean campus
25 administrator.

Page 6

1  Q. Do you recall what position you were working in
2  in 2018?
3  A. I think at that time I was a provost.
4  Q. Okay. And what does a provost do?
5  A. Campus administrator.
6  Q. Do you have any duties related to other
7  professors who are employed by the college?
8  A. As a campus administrator you oversee all
9  full-time faculty on the campus.
10  Q. Okay. And when you say oversee, what do you
11  mean by that?
12  A. Supervise.
13  Q. Do you perform performance evaluations?
14  A. I did.
15  Q. How would you go about doing that?
16  A. I don't understand your question.
17  Q. How would you decide what to put on a
18  performance evaluation? Did you have walkthroughs? Did
19  you have formal observations? Different systems use
20  different words for it.
21  A. So both.
22  Q. Okay. Is there a certain number of times you
23  had to do a formal observation as opposed to an
24  informal?
25  A. Formal evaluation is annual.

Page 7

1  Q. And what about the informal walkthroughs or
2  whatnot, how many of those, approximately, would you
3  conduct on a faculty member for completing their
4  performance evaluation?
5  A. So we didn't do walkthroughs. We may have
6  meetings, but it's really the formal evaluation.
7  Q. Would that be an announced or a preplanned
8  meeting observation, or is that something you would just
9  drop in?
10  A. Preplanned.
11  Q. And you mentioned that you oversaw all the
12  faculty members. Did you also complete all of the
13  evaluations for all faculty members at the college?
14  A. We're talking full-time faculty, not adjunct.
15  Q. Okay. So just full-time?
16  A. Correct.
17  Q. What about -- would that be across all the
18  campuses or just one particular campus?
19  A. The campus that you're the provost on.
20  Q. And which campus were you the provost on?
21  A. In what period of time?
22  Q. 2018.
23  A. I think that was just the Cocoa campus.
24  Q. Do you know Islam Shimy? He sometimes goes by
25  Sal.

Page 8

1  A. I do.
2  Q. Okay. How do you know him?
3  A. He worked at the college.
4  Q. Did you evaluate Mr. Shimy?
5  A. I don't know.
6  Q. Did you have any role in the hiring of
7  Mr. Shimy?
8  A. I think I hired him from adjunct to a full-time
9  faculty position.
10  Q. Is that something that you would normally do in
11  the course of your duties at that time?
12  A. If I had a position that was open that needed
13  to be filled, yes.
14  Q. Do adjunct professors receive any type of
15  evaluation from the college? Or did they --
16  A. They do.
17  Q. They do. And who does the -- or who did
18  adjunct evaluations in 2018?
19  A. The process would be that the department chair
20  would do their evaluation.
21  Q. And what, if anything, was done with the
22  evaluations of adjunct faculty members?
23  A. I didn't hear your question.
24  Q. What, if anything, was done with the
25  evaluations of adjuncts?

Page 9

1  A. I can't tell you.
2  Q. Do you know if they were considered in whether
3  or not to invite them back to teach another semester?
4  A. As an adjunct?
5  Q. Yes, ma'am.
6  A. I do not know.
7  Q. How long have you known Mr. Shimy?
8  A. As of 2018, or since then?
9  Q. All together how long have you known him?
10  A. I think I probably met him in 2017.
11  Q. Do you recall how you met?
12  A. We were both part of one of the committees at
13  the college.
14  Q. What position were you working in in 2021?
15  A. Specifically when in '21?
16  Q. Fall semester.
17  A. I don't recall.
18  Q. Okay. I believe you testified earlier that you
19  were involved in some way in the hiring of Mr. Shimy
20  from an adjunct to a full-time, what was your role in
21  that decision?
22  A. If it is when I was a provost, then I would've
23  been the person that hired him. If it was as a dean, I
24  would have signed off on the recommendation by his
25  direct supervisor.

3 (Pages 6 - 9)

Page 10

1  Q. And as you sit here today, you can't recall
2  which position you were working in?
3  A. Correct.
4  Q. Okay. Prior to Mr. Shimy being hired as a
5  full-time professor at the college, did you observe him
6  in his classroom?
7  A. State your question again.
8  Q. Sure. Prior to Mr. Shimy becoming a full-time
9  professor at the college, did you have the occasion to
10 go in and observe him?
11 A. No.
12 Q. Do you recall what you based your decision to
13 either recommend or outright hire Mr. Shimy to the
14 full-time position?
15 A. It will depend on what position I was in at the
16 time.
17 Q. Okay. Fair enough. Did you have any role in
18 hiring Mr. Shimy as an adjunct?
19 A. No.
20 Q. Do you know Mr. Shimy's wife?
21 A. No.
22 Q. Do you -- well, strike that.
23    Are you aware that Mr. Shimy's wife was also
24 employed by the college?
25 A. I did become aware of that.

Page 11

1  Q. Okay. How did you become aware of that?
2  A. There was a written security report about an
3  incident.
4  Q. Okay. Do you recall who wrote the report, or
5  what was in the report?
6  A. I'm sorry, say that again.
7  Q. Do you recall who wrote the report?
8  A. Who read it?
9  Q. Who wrote it? Who drafted it?
10 A. It would've been someone in security.
11 Q. Okay. Do you recall what the report said?
12 A. Just that there was some kind of incident
13 related to husband and wife, husband being Mr. Shimy.
14 Q. Did you witness any conversations at all
15 between Mr. Shimy and his wife?
16 A. I've never met his wife.
17 Q. I understand you've never met her, but did you
18 ever see the two of them speaking to each other?
19 A. I've never seen his wife.
20 Q. Do you know if the allegation that was detailed
21 in the report that you just mentioned from security, do
22 you know if that incident occurred on campus or off
23 campus?
24 A. I have no personal knowledge.
25 Q. Were you ever asked your opinion as to whether

Page 12

1  or not Mr. Shimy should be renewed for an annual
2  contract?
3  A. Was I asked that question, or was it on any
4  paperwork I would have signed?
5  Q. Either.
6  A. Yes.
7  Q. Okay. How so?
8  A. Paperwork, the annual evaluation.
9  Q. Okay. Is that something you just signed off on
10 after somebody else had conducted an evaluation or made
11 the recommendation?
12 A. It depends on what capacity I was in at the
13 time.
14 Q. Other than the security report that you
15 referenced a few moments ago, are there any other
16 allegations of spousal abuse or domestic violence that
17 you're aware of against Mr. Shimy?
18 A. Ask the question again, please.
19 Q. Sure. Other than the incident that was
20 detailed in the report from security that you mentioned
21 earlier, are you aware of any other incidents of either
22 domestic violence or spousal abuse, anything along those
23 lines, by Mr. Shimy?
24 A. I'm not aware.
25 Q. Are you aware of any other full-time faculty

Page 13

1  members at the college, during the time that you worked
2  there, who were alleged to have engaged in domestic
3  violence or spousal abuse?
4  A. Yes.
5  Q. Okay. Who?
6  A. Who? Employee?
7  Q. Yes, ma'am.
8  A. I can't remember her name.
9  Q. Okay. Do you know if she was Caucasian, Arab,
10 Asian, do you recall what her national origin might be
11 or her ethnicity?
12 A. African American.
13 Q. African American?
14 A. Uh-huh.
15 Q. Do you recall approximately what year that
16 happened?
17 A. No, I don't.
18 Q. Do you know what department the person was
19 working in?
20 A. She was full-time faculty.
21 Q. From my understanding, and absolutely tell me
22 if I'm wrong, there are different departments within the
23 college, such as science or math, whatnot, do you know
24 what department she was working in?
25 A. I think business.

Page 14

1   Q.  Do you know what campus she worked at?
2   A.  Cocoa campus, she reported to me.
3   Q.  Do you recall what your recommendation, if any,
4   was with respect to this African American full-time
5   faculty member?
6   A.  Recommendation in regards to what?
7   Q.  Her continued employment.
8   A.  She was not an annual employee, so she didn't
9   get an annual review.
10  Q.  What type of employee was she?
11  A.  Tenured.
12  Q.  She was tenured, okay.  So she had a continuing
13  contract?
14  A.  Correct.
15  Q.  And do you know if she continued to be employed
16  by the college after the allegations were made?
17  A.  She did.
18  Q.  Do you know if those allegations were
19  substantiated by law enforcement or a criminal court?
20  A.  I do not.
21  Q.  Okay.  Any other full-time faculty members that
22  you're aware of who were alleged to have engaged in
23  spousal abuse or domestic violence?
24  A.  I'm not aware of any.
25  Q.  Okay.  What about just a simple battery, are

Page 15

1   you aware of any other full-time faculty members during
2   your tenure with the college, other full-time faculty
3   members who are alleged to have engaged in some type of
4   battery against another person?
5   A.  I don't recall of anyone.
6   Q.  Did you have any involvement in the decision
7   not to renew Mr. Shimy's annual contract?
8   A.  No.
9   Q.  Have you ever heard anybody say anything
10  negative about Mr. Shimy specifically related to his
11  national origin or ethnicity?
12  A.  No.
13  Q.  Have you ever heard anyone not in front of
14  Mr. Shimy say something negative about Mr. Shimy or his
15  national origin or ethnicity?
16  A.  No.
17  Q.  Have you witnessed any administrative -- any
18  people working in the administration at the college make
19  any comments or statements that you felt were derogatory
20  towards people of a particular ethnicity or culture?
21      MR. LEVITT:  I'm going to object to the
22  question, obviously.  You can answer.
23  A.  Can you ask it again?
24  Q.  Yeah.  Are you aware of any other employees who
25  were working in the administration of the college who

Page 16

1   made derogatory statements related to another person's
2   national origin or ethnicity?
3       MR. LEVITT:  Objection.  You can answer.
4   A.  I have no personal knowledge.
5   Q.  Okay.  Did you hear from someone else that
6   these comments had been made?
7   A.  Rumors, just stuff.
8   Q.  Do you know Sandra Handfield?
9   A.  I do.
10  Q.  How do you know her?
11  A.  We worked together.
12  Q.  How often did you see each other?  Was it an
13  everyday thing?
14  A.  What period?  No, not every day.
15  Q.  Between 2018 and 2021.
16  A.  I don't understand the question.
17  Q.  How often did you see Ms. Handfield,
18  approximately, between 2018 and 2021?  So that could be
19  once a week, once a month, once a year.
20  A.  Okay.  You want a period of time.  So total
21  between 2018 and 2021, hundreds of times, hundreds of
22  times.
23  Q.  Okay.  And in what respect would you meet with
24  her?
25  A.  We would be in meetings together.  I may be on

Page 17

1   her campus, she may be on my campus.
2   Q.  Did you ever witness Ms. Handfield make any
3   statements that you felt were derogatory about
4   somebody's race, national origin, ethnicity, religion,
5   or color?
6       MR. LEVITT:  Objection.  You can answer.
7   A.  I did not witness any of that.
8       MS. MIHOK:  Okay.  That's all the questions I
9   have for you.
10      THE WITNESS:  Okay.
11      MR. LEVITT:  I just have a couple things to
12  clarify, one thing.
13          CROSS-EXAMINATION
14  BY MR. LEVITT:
15  Q.  You talked about this one person, you mentioned
16  she was not evaluated because she was tenured; is that
17  your testimony?
18  A.  She was not evaluated after I became aware of
19  the incident, because she wasn't on that cycle at the
20  time, so she was not evaluated in an annual period.
21  Q.  Okay.  I do just want to clarify to be sure I
22  understand and we understand, if someone has
23  continued -- well, let me ask it this way.
24      If someone's on an annual contract, you know
25  and understand from the contract itself, from the

Page 18
1  collective bargaining agreement and the law that there's
2  no duty of the college to renew them; would you agree
3  with that?
4     A. I understand that is in the contract.
5     Q. And the contract, there's no obligation to give
6  a reason if you're not renewing them; can we agree to
7  that, the contract says that?
8     A. That is in the contract, correct.
9     Q. Now, that's different than someone with
10 continuing contract or tenure, would you agree?
11    A. In terms of giving them a reason, or are you
12 talking in terms of evaluation?
13    Q. Well, let me rephrase it then. If you want to
14 terminate someone with tenured continuing contract, the
15 college has to have cause to do that; is that right?
16    A. According to the contract, correct.
17    Q. But if you're continuing contract, there's
18 nothing in their contract that requires cause?
19    A. If they're on an annual contract, correct.
20    Q. Right. So the college contracts and rules do
21 distinguish between someone who has an annual contract
22 versus someone with tenure?
23    A. Correct.
24       MR. LEVITT: Can we take a three-to-five minute
25    break? I just want to review some notes here and

Page 19
1     make sure I don't have anything else, but I don't
2     think I do, but give me a few minutes just to check,
3     okay?
4         THE WITNESS: Okay.
5         (Recess from 1:44 p.m. until 1:49 p.m.)
6  BY MR. LEVITT:
7     Q. All right. Just two questions. The infamous
8  lawyer two questions, right?
9        So on this one black female that you said you
10 were aware of possibly having alleged violence issues,
11 you have no personal knowledge of what they are,
12 whatever you're aware of is something you heard,
13 correct?
14    A. No, actually, as the supervisor of the
15 employee, I got the follow-up report that was done by
16 security, I had a conversation with my supervisor
17 regarding it, and was part of the decision about any
18 follow-up action.
19    Q. Okay. Was there any follow-up action that had
20 to be taken?
21    A. Yes, there was.
22    Q. What was that? What do you recall?
23    A. I think, if my memory serves me, the person was
24 removed from the classroom and -- I don't want to use
25 the word suspended, but on leave with pay pending

Page 20
1  resolution.
2     Q. And again, this is the person that we're
3  talking about that had tenure and a tenured contract,
4  correct?
5     A. Correct.
6     Q. Just one other thing regarding some timing.
7  You said you had no role in deciding whether or not to
8  renew Mr. Shimy. Do you recall in 2021 the time when
9  you were out on leave for a few months due to some
10 medical reasons?
11    A. Yes, I was.
12    Q. Okay. If you recall the time the decision --
13 the recommendations were made whether or not to renew,
14 were you still out on leave then, do you recall?
15    A. Yes, it would have been during our normal cycle
16 time, which was also during the period that I was on
17 medical leave.
18       MR. LEVITT: Okay. All right. That is all I
19    have.
20       MS. MIHOK: I have no further questions,
21    Ms. Sibley. Would you like to read or waive?
22       THE WITNESS: Read.
23       MS. MIHOK: Okay. And how would you like to be
24    contacted?
25       THE WITNESS: E-mail.

Page 21
1        THE COURT REPORTER: Okay. Can I get your
2     e-mail then, please?
3        THE WITNESS: Sibley@sibleylawpa.com.
4        THE COURT REPORTER: Perfect, thank you so
5     much.
6        THEREUPON, the Deposition of Dedra Sibley,
7  taken at the instance of the Plaintiff, was concluded at
8  1:52 p.m.

Page 22

1   CERTIFICATE OF REPORTER OATH
2
3   STATE OF FLORIDA
4   COUNTY OF BREVARD
5       I, Amanda L. Daniel-Ennis, Stenographic Court
6   Reporter, and Notary Public in and for the State of
7   Florida at large, hereby certify that the witness named
8   herein appeared before me remotely on February 20, 2025,
9   and was duly sworn.
10      WITNESS my hand and official seal this
11  03/04/2025.
12
13
14  [signature]
15      AMANDA L. DANIEL-ENNIS, COURT REPORTER
16      NOTARY PUBLIC - STATE OF FLORIDA
17      MY COMMISSION NO. HH562828
18      EXPIRES:  7-1-2028
19
20
21
22
23
24
25

Page 23

1   CERTIFICATE OF REPORTER
2   STATE OF FLORIDA
3   COUNTY OF BREVARD
4       I, Amanda L. Daniel-Ennis, Stenographic Court
5   Reporter, do hereby certify that I was authorized to and
6   did stenographically report the examination of the
7   witness named herein; that a review of the transcript
8   was requested; and that the foregoing transcript is a
9   true record of my stenographic notes.
10      I FURTHER CERTIFY that I am not a relative,
11  employee, or attorney, or counsel for any of the
12  parties, nor am I a relative or employee of any of the
13  parties' attorney or counsel connected with the action,
14  nor am I financially interested in the outcome of this
15  action.
16      DATED THIS 03/04/2025 at Brevard County,
17  Florida.
18
19  [signature]
        AMANDA L. DANIEL-ENNIS,
20      COURT REPORTER and NOTARY PUBLIC
21
22
23
24
25

Page 24

1   TO: Dedra Sibley
        sibley@sibleylawpa.com
2
3            March 4, 2025
4
    IN RE:  Islam Shimy v. Eastern Florida State College
5       Deposition of Dedra Sibley
        Taken February 20, 2025
6       Job No. 7178143
7
        The above-referenced transcript is ready for
8   review.
9       Please read the testimony to verify its
    accuracy.  If there are any changes, please note those
10  with the reason on the attached Errata Sheet.
11      Please date and sign the Errata Sheet and
    e-mail it to Veritext at transcripts-fl@veritext.com,
12  and copies will be e-mailed to all ordering parties.
13      It is suggested that the completed Errata Sheet
    be returned 30 days from receipt of testimony, as
14  considered under Federal rules*, however, there is no
    Florida statute to this regard.
15
        If you fail to do so, the transcript may be
16  used as if signed.
17
        Thank you,
18
        Veritext Legal Solutions
19
20  *Federal Civil Procedure Rule 30(e)/Florida Civil
    Procedure Rule 1.310(e).
21
22
23
24
25

Page 25

1           ERRATA SHEET
      DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES ON THIS PAGE
2
    IN RE:  ISLAM SHIMY v. EASTERN FLORIDA STATE COLLEGE
3   CASE NO.:  6:23-cv-01869-RBD-DCI
4   DEPOSITION OF DEDRA SIBLEY
    TAKEN FEBRUARY 20, 2025
5
    PAGE #/LINE #   CHANGE              REASON
6
7
8
9
10
11
12
13
14
15
16
17
18
19
    Under penalties of perjury, I declare that I have read
20  the foregoing document and that the facts stated in it
    are true.
21
22  _____   _____
        DEDRA SIBLEY                DATE
23
    cc: Melissa Mihok, Esquire
24      Mark Levitt, Esquire
25

[& - avenue]                                                                                                    Page 26

| & | 21 9:15 | 8 | alleged 13:2 |
|---|---|---|---|
| **&** 3:9 4:25 | **22** 3:7 | **813** 2:6 | 14:22 15:3 |
| **0** | **22nd** 2:4 | **a** | 19:10 |
| **01869** 1:3 25:3 | **23** 3:8 | **above** 24:7 | **amanda** 1:23 |
| **03/04/2025** | **24** 3:9 | **absolutely** | 22:5,15 23:4,19 |
| 22:11 23:16 | **25** 3:10 | 13:21 | **american** 13:12 |
| **1** | **3** | **abuse** 12:16,22 | 13:13 14:4 |
| **1.310** 24:20 | **30** 24:13,20 | 13:3 14:23 | **announced** 7:7 |
| **10** 2:16 | **300** 2:9,13 | **accuracy** 24:9 | **annual** 6:25 |
| **1300** 2:9,13 | **321** 2:18 | **action** 19:18,19 | 12:1,8 14:8,9 |
| **1401** 2:4 | **32523** 22:14 | 23:13,15 | 15:7 17:20,24 |
| **17** 3:6 | 23:19 | **actually** 19:14 | 18:19,21 |
| **1:20** 1:13 4:2 | **32801-3379** | **adjunct** 7:14 8:8 | **answer** 15:22 |
| **1:44** 19:5 | 2:10,13 | 8:14,18,22 9:4 | 16:3 17:6 |
| **1:49** 19:5 | **32935-2310** | 9:20 10:18 | **anybody** 15:9 |
| **1:52** 1:13 21:8 | 2:17 | **adjuncts** 8:25 | **anybody's** 4:19 |
| **2** | **33605-1837** 2:5 | **administration** | **appearances** 2:1 |
| **20** 1:12 22:8 | **3865** 2:16 | 15:18,25 | **appeared** 1:14 |
| 24:5 25:4 | **4** | **administrative** | 22:8 |
| **2007** 5:8 | **4** 3:5 24:3 | 15:17 | **approximately** |
| **2011** 5:17 | **407** 2:11,14 | **administrator** | 5:18 7:2 13:15 |
| **2017** 9:10 | **418-2306** 2:11 | 5:25 6:5,8 | 16:18 |
| **2018** 6:2 7:22 | **418-2311** 2:14 | **affirm** 4:4 | **arab** 13:9 |
| 8:18 9:8 16:15 | **433-5559** 2:18 | **african** 13:12,13 | **asian** 13:10 |
| 16:18,21 | **5** | 14:4 | **asked** 11:25 |
| **2021** 9:14 16:15 | **549-4550** 2:6 | **ago** 12:15 | 12:3 |
| 16:18,21 20:8 | **6** | **agree** 5:13 18:2 | **associate** 5:23 |
| **2022** 5:20 | **6:23** 1:3 25:3 | 18:6,10 | **associates** 4:25 |
| **2025** 1:12 22:8 | **7** | **agreement** 18:1 | **attached** 24:10 |
| 24:3,5 25:4 | **7-1-2028** 22:18 | **allegation** 11:20 | **attorney** 4:13 |
| **205** 2:16 | **7178143** 24:6 | **allegations** | 5:2 23:11,13 |
|  |  | 12:16 14:16,18 | **authorized** 23:5 |
|  |  |  | **avenue** 2:4,9,13 |

**[aware - decision]**                                                Page 27

**aware** 10:23,25 11:1 12:17,21 12:24,25 14:22 14:24 15:1,24 17:18 19:10,12

**b**

**b** 3:13
**back** 9:3
**bar** 5:7
**bargaining** 18:1
**based** 10:12
**battery** 14:25 15:4
**becoming** 10:8
**behalf** 1:11
**believe** 9:18
**black** 19:9
**board** 1:7
**break** 18:25
**brevard** 22:4 23:3,16
**building** 2:16
**business** 13:25

**c**

**called** 3:3 4:8
**campus** 5:24 6:5 6:8,9 7:18,19,20 7:23 11:22,23 14:1,2 17:1,1
**campuses** 7:18
**capacity** 12:12
**case** 1:3 25:3
**caucasian** 13:9
**cause** 18:15,18
**cc** 25:23
**certain** 6:22
**certificate** 3:7,8 22:1 23:1
**certify** 22:7 23:5 23:10
**chair** 8:19
**change** 25:5
**changes** 24:9 25:1
**check** 19:2
**civil** 24:20,20
**clarify** 17:12,21
**classroom** 10:6 19:24
**cocoa** 7:23 14:2
**collective** 18:1
**college** 1:7 2:16 5:10,13,14,16 6:7 7:13 8:3,15 9:13 10:5,9,24 13:1,23 14:16 15:2,18,25 18:2 18:15,20 24:4 25:2
**color** 17:5
**comments** 15:19 16:6
**commission** 22:17
**committees** 9:12
**complete** 7:12
**completed** 24:13
**completing** 7:3
**concluded** 21:7
**conduct** 7:3
**conducted** 12:10
**connected** 23:13
**considered** 9:2 24:14
**contacted** 20:24
**continued** 14:7 14:15 17:23
**continuing** 14:12 18:10,14 18:17
**contract** 12:2 14:13 15:7 17:24,25 18:4,5 18:7,8,10,14,16 18:17,18,19,21 20:3
**contracts** 18:20
**conversation** 19:16
**conversations** 11:14
**copies** 24:12
**correct** 7:16 10:3 14:14 18:8 18:16,19,23 19:13 20:4,5
**counsel** 2:2,7 23:11,13
**county** 22:4 23:3,16
**couple** 17:11
**course** 8:11
**court** 1:1,24 4:3 14:19 21:1,4 22:5,15 23:4,20
**criminal** 14:19
**cross** 3:6 17:13
**culture** 15:20
**currently** 4:22
**cv** 1:3 25:3
**cycle** 17:19 20:15

**d**

**d** 3:1
**daniel** 1:23 22:5 22:15 23:4,19
**date** 1:12 24:11 25:22
**dated** 23:16
**day** 16:14
**days** 24:13
**dci** 1:3 25:3
**dean** 5:24 9:23
**decide** 6:17
**deciding** 20:7
**decision** 9:21 10:12 15:6 19:17 20:12

**[declare - front]**  Page 28

**declare** 25:19
**dedra** 1:10 3:4 4:8 21:6 24:1,5 25:4,22
**defendant** 1:8 2:7
**department** 8:19 13:18,24
**departments** 13:22
**depend** 10:15
**depends** 12:12
**deposition** 1:10 5:13 21:6 24:5 25:4
**depositions** 4:17
**derogatory** 15:19 16:1 17:3
**detailed** 11:20 12:20
**different** 6:19 6:20 13:22 18:9
**direct** 3:5 4:11 9:25
**director** 5:22,22
**distinguish** 18:21
**district** 1:1,1
**division** 1:2
**document** 25:20
**doing** 6:15
**domestic** 12:16 12:22 13:2 14:23

**drafted** 11:9
**drop** 7:9
**due** 20:9
**duly** 4:9 22:9
**duties** 6:6 8:11
**duty** 18:2

**e**

**e** 3:1,13 20:25 21:2 24:11,12 24:20,20
**earlier** 9:18 12:21
**east** 2:4
**eastern** 1:7 2:16 5:9,14 24:4 25:2
**easternflorida....** 2:17
**either** 10:13 12:5,21
**employed** 4:22 4:24 5:16 6:7 10:24 14:15
**employee** 13:6 14:8,10 19:15 23:11,12
**employees** 15:24
**employment** 14:7
**enforcement** 14:19
**engaged** 13:2 14:22 15:3

**ennis** 1:23 22:5 22:15 23:4,19
**enter** 25:1
**errata** 3:10 24:10,11,13 25:1
**esquire** 2:3,8,12 2:15 25:23,24
**ethnicity** 13:11 15:11,15,20 16:2 17:4
**evaluate** 8:4
**evaluated** 17:16 17:18,20
**evaluation** 6:18 6:25 7:4,6 8:15 8:20 12:8,10 18:12
**evaluations** 6:13 7:13 8:18 8:22,25
**everyday** 16:13
**examination** 1:22 3:5,6 4:11 17:13 23:6
**expires** 22:18

**f**

**facts** 25:20
**faculty** 6:9 7:3 7:12,13,14 8:9 8:22 12:25 13:20 14:5,21 15:1,2

**fail** 24:15
**fair** 10:17
**fall** 9:16
**familiar** 4:17,18
**february** 1:12 22:8 24:5 25:4
**federal** 24:14,20
**felt** 15:19 17:3
**female** 19:9
**filled** 8:13
**final** 5:24
**financially** 23:14
**first** 4:9
**five** 18:24
**fl** 24:11
**florida** 1:1,7 2:5 2:10,13,16,17 5:9,14 22:3,7,16 23:2,17 24:4,14 24:20 25:2
**follow** 19:15,18 19:19
**following** 4:1
**follows** 4:10
**ford** 2:9,12
**fordharrison.c...** 2:10,14
**foregoing** 23:8 25:20
**formal** 6:19,23 6:25 7:6
**front** 15:13

**[full - mentioned]**                                                                 Page 29

| | | | |
|---|---|---|---|
| **full** 6:9 7:14,15 8:8 9:20 10:5,8 10:14 12:25 13:20 14:4,21 15:1,2 | **hiring** 8:6 9:19 10:18 | **k** | **long** 5:3,7 9:7,9 |
| | **hold** 5:21 | **kind** 11:12 | **m** |
| | **howard** 2:12 | **know** 5:18 7:24 8:2,5 9:2,6 10:20 11:20,22 13:9,18,23 14:1 14:15,18 16:8 16:10 17:24 | **ma'am** 5:5 9:5 13:7 |
| **further** 20:20 23:10 | **huh** 13:14 | | **made** 12:10 14:16 16:1,6 20:13 |
| | **hundreds** 16:21 16:21 | | |
| **g** | **husband** 11:13 11:13 | | **mail** 20:25 21:2 24:11 |
| **give** 4:5,21 18:5 19:2 | **hwaldman** 2:14 | **knowledge** 11:24 16:4 19:11 | **mailed** 24:12 |
| **giving** 18:11 | **i** | | **make** 15:18 17:2 19:1 |
| **go** 4:16 6:15 10:10 | **incident** 11:3,12 11:22 12:19 17:19 | **known** 9:7,9 | **march** 24:3 |
| | | **l** | **mark** 2:8 25:24 |
| **goes** 7:24 | **incidents** 12:21 | **l** 1:23 22:5,15 23:4,19 | **math** 13:23 |
| **going** 4:19 5:12 15:21 | **infamous** 19:7 | **large** 22:7 | **mean** 6:11 |
| | **informal** 6:24 7:1 | **law** 2:4 4:25 14:19 18:1 | **medical** 20:10 20:17 |
| **good** 4:20 | | | **meet** 16:23 |
| **h** | **instance** 21:7 | **lawyer** 19:8 | **meeting** 7:8 |
| **h** 3:13 | **instruction** 4:21 | **leave** 19:25 20:9 20:14,17 | **meetings** 7:6 16:25 |
| **hand** 4:4 22:10 | **interested** 23:14 | | |
| **handfield** 16:8 16:17 17:2 | **invite** 9:3 | **legal** 24:18 | **melbourne** 2:17 |
| | **involved** 9:19 | **letter** 3:9 | **melissa** 2:3,5 25:23 |
| **handle** 4:20 | **involvement** 15:6 | **levitt** 2:8 3:6 15:21 16:3 17:6 17:11,14 18:24 19:6 20:18 25:24 | |
| **happened** 13:16 | | | **member** 5:7 7:3 14:5 |
| **harrison** 2:9,12 | **islam** 1:4 7:24 24:4 25:2 | | **members** 7:12 7:13 8:22 13:1 14:21 15:1,3 |
| **hear** 8:23 16:5 | | | |
| **heard** 15:9,13 19:12 | **issues** 19:10 | **line** 25:5 | **memory** 19:23 |
| **held** 5:3 | **j** | **lines** 12:23 | **mentioned** 7:11 11:21 12:20 |
| **hh562828** 22:17 | **job** 24:6 | **llp** 2:9,12 | |
| **hire** 10:13 | | **location** 5:4 | |
| **hired** 8:8 9:23 10:4 | | | |

**[mentioned - professors]**                                              Page 30

17:15
**met** 9:10,11
  11:16,17
**michael** 2:15
**middle** 1:1
**mihok** 2:3,4 3:5
  4:12 17:8 20:20
  20:23 25:23
**mihoklaw.us**
  2:5
**minute** 18:24
**minutes** 19:2
**mlevitt** 2:10
**moments** 12:15
**month** 16:19
**months** 20:9

**n**

**n** 3:1
**name** 13:8
**named** 22:7
  23:7
**national** 13:10
  15:11,15 16:2
  17:4
**need** 4:21
**needed** 8:12
**negative** 15:10
  15:14
**never** 11:16,17
  11:19
**normal** 20:15
**normally** 8:10

**north** 2:16
**notary** 22:6,16
  23:20
**note** 24:9
**notes** 18:25 23:9
**number** 6:22

**o**

**oath** 3:7 22:1
**object** 15:21
**objection** 16:3
  17:6
**obligation** 18:5
**observation**
  6:23 7:8
**observations**
  6:19
**observe** 10:5,10
**obviously** 15:22
**occasion** 10:9
**occurred** 11:22
**official** 22:10
**okay** 5:16,18
  6:4,10,22 7:15
  8:2 9:18 10:4,17
  11:1,4,11 12:7,9
  13:5,9 14:12,21
  14:25 16:5,20
  16:23 17:8,10
  17:21 19:3,4,19
  20:12,18,23
  21:1
**once** 16:19,19
  16:19

**open** 8:12
**opinion** 11:25
**opposed** 6:23
**orange** 2:9,13
**ordering** 24:12
**origin** 13:10
  15:11,15 16:2
  17:4
**orlando** 1:2
  2:10,13
**outcome** 23:14
**outright** 10:13
**oversaw** 7:11
**oversee** 6:8,10

**p**

**p.m.** 1:13,13 4:2
  19:5,5 21:8
**page** 3:2 25:1,5
**paperwork** 12:4
  12:8
**part** 9:12 19:17
**particular** 7:18
  15:20
**parties** 1:14
  23:12,13 24:12
**pay** 19:25
**penalties** 25:19
**pending** 19:25
**people** 15:18,20
**perfect** 21:4
**perform** 6:13
**performance**
  6:13,18 7:4

**period** 7:21
  16:14,20 17:20
  20:16
**perjury** 25:19
**person** 9:23
  13:18 15:4
  17:15 19:23
  20:2
**person's** 16:1
**personal** 11:24
  16:4 19:11
**place** 1:14
**plaintiff** 1:5,11
  2:2 3:3 4:9 21:7
**please** 4:3 12:18
  21:2 24:9,9,11
**position** 5:3,22
  5:23,23,24 6:1
  8:9,12 9:14 10:2
  10:14,15
**positions** 5:21
**possibly** 19:10
**preplanned** 7:7
  7:10
**pretty** 4:20,20
**prior** 10:4,8
**probably** 9:10
**procedure**
  24:20,20
**proceedings** 4:1
**process** 8:19
**professor** 10:5,9
**professors** 6:7
  8:14

**[provost - signature]**                                                                 Page 31

| | | | |
|---|---|---|---|
| **provost** 5:23,23 6:3,4 7:19,20 9:22 | **receive** 8:14 | 12:14,20 19:15 23:6 | **says** 18:7 |
| **public** 22:6,16 23:20 | **recess** 19:5 | **reported** 14:2 | **science** 13:23 |
| **put** 6:17 | **recommend** 10:13 | **reporter** 1:24 3:7,8 4:3 21:1,4 22:1,6,15 23:1,5 23:20 | **seal** 22:10 |
| **q** | **recommendati...** 9:24 12:11 14:3 14:6 | | **security** 11:2,10 11:21 12:14,20 19:16 |
| **question** 6:16 8:23 10:7 12:3 12:18 15:22 16:16 | **recommendati...** 20:13 | **requested** 23:8 | **see** 11:18 16:12 16:17 |
| **questions** 17:8 19:7,8 20:20 | **record** 23:9 | **requires** 18:18 | **seen** 11:19 |
| | **refer** 5:12 | **resolution** 20:1 | **semester** 9:3,16 |
| **r** | **referenced** 12:15 24:7 | **respect** 14:4 16:23 | **serves** 19:23 |
| **race** 17:4 | **regard** 24:14 | **returned** 24:13 | **sheet** 3:10 24:10 24:11,13 25:1 |
| **raise** 4:3 | **regarding** 19:17 20:6 | **review** 14:9 18:25 23:7 24:8 | **shimy** 1:4 7:24 8:4,7 9:7,19 10:4,8,13,18 11:13,15 12:1 12:17,23 15:10 15:14,14 20:8 24:4 25:2 |
| **rbd** 1:3 25:3 | **regards** 14:6 | **richey** 2:15 | |
| **read** 3:9 11:8 20:21,22 24:9 25:19 | **related** 6:6 11:13 15:10 16:1 | **richeym** 2:17 | |
| **ready** 24:7 | **relative** 23:10 23:12 | **right** 4:3 18:15 18:20 19:7,8 20:18 | |
| **really** 7:6 | **religion** 17:4 | **road** 2:16 | **shimy's** 10:20 10:23 15:7 |
| **reason** 18:6,11 24:10 25:5 | **remember** 13:8 | **role** 8:6 9:20 10:17 20:7 | **sibley** 1:10 3:4 4:8,13,25 20:21 21:3,6 24:1,1,5 25:4,22 |
| **reasons** 20:10 | **remotely** 1:14 22:8 | **room** 2:16 | |
| **recall** 6:1 9:11 9:17 10:1,12 11:4,7,11 13:10 13:15 14:3 15:5 19:22 20:8,12 20:14 | **removed** 19:24 | **rule** 24:20,20 | |
| | **renew** 15:7 18:2 20:8,13 | **rules** 4:16 18:20 24:14 | **sibleylawpa.c...** 24:1 |
| | **renewed** 12:1 | **rumors** 16:7 | **sibleylawpa.c...** 21:3 |
| | **renewing** 18:6 | **s** | |
| | **rephrase** 18:13 | **s** 3:13 | **sign** 3:9 24:11 |
| **receipt** 24:13 | **report** 11:2,4,5 11:7,11,21 | **sal** 1:4 7:25 | **signature** 22:14 23:19 |
| | | **sandra** 16:8 | |

[signed - veritext.com] Page 32

| | | | |
|---|---|---|---|
| signed  9:24 12:4 12:9 24:16 | stuff  16:7 | terminate  18:14 | transcript  23:7 23:8 24:7,15 25:1 |
| simple  14:25 | substantiated  14:19 | terms  18:11,12 | transcripts  24:11 |
| sit  10:1 | suggested  24:13 | testified  4:9 9:18 | true  23:9 25:20 |
| solemnly  4:4 | suite  2:9,13 | testimony  4:5 17:17 24:9,13 | trustees  1:7 |
| solutions  24:18 | supervise  6:12 | thank  21:4 24:17 | truth  4:5,6,6 |
| somebody  12:10 | supervisor  9:25 19:14,16 | thing  16:13 17:12 20:6 | two  11:18 19:7 19:8 |
| somebody's  17:4 | sure  4:20 10:8 12:19 17:21 19:1 | things  17:11 | type  8:14 14:10 15:3 |
| someone's  17:24 | suspended  19:25 | think  5:17,23 6:3 7:23 8:8 9:10 13:25 19:2 19:23 | **u** |
| sorry  11:6 | swear  4:4 | | uh  13:14 |
| south  2:9,13 | sworn  4:9 22:9 | | under  24:14 25:19 |
| speaking  11:18 | systems  6:19 | three  5:6 18:24 | understand  4:13 6:16 11:17 16:16 17:22,22 17:25 18:4 |
| specifically  9:15 15:10 | **t** | time  1:13 4:19 6:3,9 7:14,15,21 8:8,11 9:20 10:5 10:8,14,16 12:13,25 13:1 13:20 14:4,21 15:1,2 16:20 17:20 20:8,12 20:16 | understanding  13:21 |
| spousal  12:16 12:22 13:3 14:23 | t  3:13 | | united  1:1 |
| started  5:17 | take  18:24 | | use  6:19 19:24 |
| state  1:7 2:16 5:9,14 10:7 22:3 22:6,16 23:2 24:4 25:2 | taken  1:11,12 1:22 4:2 19:20 21:7 24:5 25:4 | | used  24:16 |
| stated  25:20 | talked  17:15 | times  5:12 6:22 16:21,22 | **v** |
| statements  15:19 16:1 17:3 | talking  7:14 18:12 20:3 | timing  20:6 | v  24:4 25:2 |
| states  1:1 | tampa  2:5 | today  10:1 | verify  24:9 |
| statute  24:14 | teach  9:3 | together  9:9 16:11,25 | veritext  24:11 24:18 |
| stenographic  1:24 22:5 23:4,9 | tell  9:1 13:21 | total  16:20 | veritext.com  24:11 |
| stenographica...  23:6 | tenure  15:2 18:10,22 20:3 | towards  15:20 | |
| strike  10:22 | tenured  14:11 14:12 17:16 18:14 20:3 | | |

**[versus - years]** Page 33

| | |
|---|---|
| **versus** 18:22<br>**violence** 12:16<br>  12:22 13:3<br>  14:23 19:10<br>**vs** 1:6 | **working** 6:1<br>  9:14 10:2 13:19<br>  13:24 15:18,25<br>**would've** 9:22<br>  11:10 |
| **w** | **write** 25:1<br>**written** 11:2<br>**wrong** 13:22<br>**wrote** 11:4,7,9 |
| **waive** 20:21<br>**waldman** 2:12<br>**walkthroughs**<br>  6:18 7:1,5<br>**want** 16:20<br>  17:21 18:13,25<br>  19:24<br>**waste** 4:19<br>**way** 9:19 17:23<br>**week** 16:19<br>**whatnot** 7:2<br>  13:23<br>**wickham** 2:16<br>**wife** 10:20,23<br>  11:13,15,16,19<br>**wish** 4:18<br>**witness** 1:22 3:2<br>  3:9 4:7,8 11:14<br>  17:2,7,10 19:4<br>  20:22,25 21:3<br>  22:7,10 23:7<br>**witnessed** 15:17<br>**word** 19:25<br>**words** 6:20<br>**work** 5:9<br>**worked** 5:19 8:3<br>  13:1 14:1 16:11 | **x** |
| | **x** 3:1,13 |
| | **y** |
| | **yeah** 15:24<br>**year** 13:15<br>  16:19<br>**years** 5:6,18 |

FLORIDA RULES OF CIVIL PROCEDURE

Rule 1.310

(e) Witness Review. If the testimony is transcribed, the transcript shall be furnished to the witness for examination and shall be read to or by the witness unless the examination and reading are waived by the witness and by the parties. Any changes in form or substance that the witness wants to make shall be listed in writing by the officer with a statement of the reasons given by the witness for making the changes. The changes shall be attached to the transcript. It shall then be signed by the witness unless the parties waived the signing or the witness is ill, cannot be found, or refuses to sign. If the transcript is not signed by the witness within a reasonable time after it is furnished to the witness, the officer shall sign the transcript and state on the transcript the waiver, illness, absence of the witness, or refusal to sign with any reasons given therefor. The deposition may then be used as fully as though signed unless the court holds that the reasons given for the refusal to sign require rejection of

the deposition wholly or partly, on motion under rule 1.330(d)(4).

DISCLAIMER: THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.